**Victorina H. LAZARO, Plaintiff,**

v.

**GOOD SAMARITAN HOSPITAL, Defendant.**

**No. 98 Civ. 5980(BDP).**

United States District Court, S.D. New York.

May 6, 1999.

Michael D. Diederich, Jr., Stony Point, NY, for plaintiff.

Daniel Christopher Moreland, Clifton, Budd & DeMaria, LLP, New York City, for defendant.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff Victorina Lazaro sues the Defendant Good Samaritan Hospital (the "Hospital") alleging that the Hospital discriminated against her based upon her age and race, as well as breached her employment contract by terminating her. Lazaro's first and fourth claims assert race discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f). Lazaro's third claim asserts breach of an employment contract under New York State law. The Hospital moves pursuant to Fed.R.Civ.P. Rule 12(b)(6) to dismiss Lazaro's first, third, and fourth claims. For the following reasons the motion is denied in part and granted in part.

## BACKGROUND

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court is obligated to construe the pleadings in the plaintiff's favor and accept as true the well pled allegations in the complaint. *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). The following facts are accordingly construed.

In 1976, Victorina Lazaro, a Filipino female, began working at the Hospital as a nurse in the emergency room. Although there was no written employment contract, Lazaro contends that the Hospital limited its right, through various documents (e.g. employee manuals), to terminate employees only for good cause. In 1995, Lazaro was disciplined for "professional misjudgment" when a child who came to the emergency room with a lacerated arm did not receive sufficiently prompt attention. In 1997, when Lazaro was 56 years old, she was terminated for a "gross dereliction of duty" when she allowed a pregnant woman who was not yet experiencing contractions to leave the Hospital's emergency room and go to another hospital where the woman's obstetrician had hospital privileges.

Lazaro believed that the Hospital's treatment of her was discriminatory and turned to the New York State Division for Human Rights ("DHR") where she filed a charge of age, but not race, discrimination. In response to the Hospital's contention that this omission now bars Lazaro's claim of race discrimination, she alleges in her amended complaint that she informed the DHR personnel that she believed her mistreatment was due to both age and race. Lazaro contends that—proceeding *pro se*—she relied on DHR personnel for the framing of the charge and believed that the charge included a claim of discrimination based upon her ethnicity, national origin and race. Lazaro received a "right to sue" letter from the EEOC for age discrimination on June 12, 1998, after which this suit was commenced.

## DISCUSSION

### I Title VII

■ The Hospital moves for the dismissal of Lazaro's race discrimination claim under Title VII, contending that she has failed to exhaust appropriate administrative remedies. Filing a charge with the EEOC is, of course, a jurisdictional prerequisite to a private action under Title VII. *See* 42 U.S.C. § 2000e–5(e); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A district court has jurisdiction only to hear Title VII claims that are either in-

cluded in the EEOC charge or "reasonably related" to the allegations in the EEOC charge. *Butts v. City of New York Dep't of Housing Preservation and Dev.*, 990 F.2d 1397, 1402 (2d Cir.1993). Our Circuit, "[r]ecognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, ... [has] allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the 'scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination.'" *Id.* (quoting *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d cir.1978)).

■ Since Lazaro's right to sue letter only addresses age discrimination, the Hospital contends that Lazaro has not exhausted her administrative remedies because she did not file a race discrimination charge with the EEOC. Lazaro's amended complaint states, however,

> [p]laintiff informed DHR personnel that she believe[d] that defendant's discrimination against her was due to her age, and the fact that she is Filipino. Plaintiff relied upon DHR personnel for the proper filing of her charge of discrimination, and believed that such charge included a claim of discrimination based upon plaintiff's ethnicity, national origin and race. Plaintiff was not at this time represented by an attorney.

Amended Complaint, ¶ 71. Lazaro also states, "[u]pon information and belief, the DHR inadvertently failed to process plaintiff's allegations of ethic, national origin, and race discrimination which were presented to it." Amended Complaint, ¶ 89. Consequently, Lazaro contends that her Title VII claim may be "reasonably related" to her age discrimination claim or may present an appropriate situation for equitable tolling. *See Cooper v. Ayerst Lederle*, 34 F.Supp.2d 197, 202 (S.D.N.Y.1999) (denying summary judgment when alleged procedural deficiencies occurred as a re-

sult of the EEOC's errors). On this motion, the text of Lazaro's charge and the circumstances surrounding its filing are not before this Court. Since, as previously noted, the Court must accept as true all factual allegations in the amended complaint and construe the pleadings in the plaintiff's favor and because of the lack of discovery, the Court cannot at this stage conclude that the plaintiff has failed to state a claim under Title VII for race discrimination. The defendant's motion under Rule 12(b)(6) to dismiss the Title VII claim is denied.

## II Breach of Contract

■ The Hospital also moves to dismiss Lazaro's breach of contract claim. It is settled under New York law that absent an agreement establishing a fixed duration of employment, an employment relationship is presumed to be a hiring at-will, terminable at any time by either party. *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987). An employee may rebut the presumption of at-will employment, however, by establishing that (1) the employer made the employee aware of its express written policy limiting its right of discharge, and (2) the employee detrimentally relied on that policy in accepting employment. *Harrison v. Indosuez*, 6 F.Supp.2d 224, 230 (S.D.N.Y.1998) (citing *De Petris v. Union Settlement Ass'n, Inc.*, 86 N.Y.2d 406, 410, 633 N.Y.S.2d 274, 657 N.E.2d 269 (1995) ("An [at-will] employee may recover, however, by establishing that the employer made the employee aware of its express written policy limiting its right of discharge and that the employee detrimentally relied on that policy in accepting employment.")); *Shafrir v. Ass'n of Reform Zionists of America*, 998 F.Supp. 355, 363 (S.D.N.Y.1998) (same). The New York Court of Appeals has stated, "[m]ere existence of a written policy, without the additional elements ..., does not limit an employer's right to discharge an at-will employee or give rise to a legally enforceable claim by the employee against the employer." *De Petris*, 86 N.Y.2d at 410.

■ Here, the plaintiff has failed to allege that she entered into a written employment contract with the hospital. Lazaro's amended complaint states, "[u]pon information and belief, the terms of plaintiff's contract of employment with the Hospital were defined by, among other things, an employee handbook and other statements of employee rights issued by the Hospital, including is [sic] own internal rules, policies, regulation and past practices." Amended Complaint, ¶ 54. Accordingly, because she lacks a written employment contract, Lazaro is an at-will employee.

■ Lazaro, however, asserts in her complaint that, "[u]pon information and belief, based upon her 20 years of review of Good Samaritan's policies, manuals and other information, plaintiff believe [sic] that these prior manuals, policies and other documents, in addition to current documents, limited defendant's right to terminate plaintiff, and represented to plaintiff that she could only be fired 'for good cause.'" Amended Complaint, ¶ 60. Lazaro claims that a grant of the Hospital's motion to dismiss her breach of contract claim would be premature due to the lack of discovery. Irrespective of the Hospital employee manuals that will potentially be produced in discovery, Lazaro, however, has failed to plead in her amended complaint detrimental reliance, a required element to rebut at-will employment under New York law. *See Harrison,* 6 F.Supp.2d at 232 (granting summary judgment when plaintiff provided no evidence that she detrimentally relied upon a purported termination limitation when she accepted employment); *Charyn v. National Westminster Bank, U.S.A.,* 612 N.Y.S.2d 432, 204 A.D.2d 676 (1994) (finding no reliance where plaintiff neither declined any opportunities or was induced to take any action as a result of the statements in the employment handbook). Lazaro merely states in her brief that, "[i]f 20 years of continuous loyal service undertaken upon express documents guaranteeing 'job security' is not detrimental reliance, it is hard

to envision when such reliance must be." Plaintiff's Brief, p. 11. This statement is a wholly insufficient basis to assert detrimental reliance. Furthermore, "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989). The defendant's motion to dismiss the plaintiff's breach of contract claim is granted.

*III Section 1981*

■ The Hospital also moves to dismiss Lazaro's 42 U.S.C. § 1981 claim because of the lack of an employment contract. Section 1981 guarantees to all persons "the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 applies solely to intentional racial discrimination in the making and enforcement of contracts. *See Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 609, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) ("Although § 1981 does not itself use the word 'race,' the Court has construed this section to forbid all 'racial' discrimination in the making of private ... contracts."). Our Circuit has held that § 1981 claims require evidence of intentional discrimination that has interfered with a contractual relationship. *See Murray v. National Broad. Co.,* 844 F.2d 988, 995 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

Although our Circuit has not directly ruled on the effect, if any, of the Civil Rights Act of 1991 on § 1981 and at-will employees, other circuits have, and they have held that employees subject to at-will termination nevertheless have a "contract" for purposes of § 1981. *See Spriggs v. Diamond Auto Glass,* 165 F.3d 1015 (4th Cir.1999); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.,* 160 F.3d 1048 (5th Cir.1998); *but see Gonzalez v. Ingersoll Mill. Mach. Co.,* 133 F.3d 1025, 1035 (7th Cir.1998) (noting, but finding no need to hold that under Illinois law an employee at-will has no contractual rights to support a claim under § 1981). The court in *Spriggs* noted that although the Supreme

Court in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) construed the language of § 1981 narrowly, with the Civil Rights Act of 1991, Congress amended § 1981 by adding a broad definition of "make and enforce contracts." Section 1981 as amended, states:

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(b). The court in *Spriggs* also noted that although an employee is at-will, there is a contractual relationship because the employer offers to pay an employee if he performs the required duties, the employee accepts that offer by beginning work and the employee's performance of the assigned duties are consideration exchanged for the employer's promise to pay. *Spriggs*, 165 F.3d at 1018. *See also Lane v. Ogden Entertainment, Inc.*, 13 F.Supp.2d 1261, 1272 (M.D.Ala.1998) (holding that an at-will employee could bring a § 1981 claim, and stating "[e]ven at-will employees have some sort of contract, in the broader legal sense of that term, with their employer. Even though the at-will employee could not file a breach of contract claim for being fired (since he has no protections), the at-will employee would be able to file a breach of contract claim if, for example, he was not paid the correct amount. 'Contract' is used in § 1981 in its basic legal meaning, not a specialized labor law meaning."). Further, while an at-will employee can be terminated by either party at-will, the lack of an agreed upon duration does not invalidate the underlying contract itself. *Spriggs*, 165 F.3d at 1018 (citing Restatement (Second) of Contracts § 33 cmt. D, illus. 6 (1981)).

In concluding that an at-will employee may maintain a claim under § 1981, the court in *Fadeyi*, noted the legislative history of the 1991 amendments and stated that the amendments were "'designed to restore and strengthen civil rights laws that ban discrimination in employment.... By restoring the broad scope of § 1981, Congress will ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race.'" *Fadeyi*, 160 F.3d at 1050 (quoting H.R.Rep. No. 102–40(II), 102nd Cong., 1st Sess., at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 694)). The *Fadeyi* court finally noted that "[t]o hold that at-will employees have no right of action under § 1981 would effectively eviscerate the very protection that Congress expressly intended to install for minority employees, especially those who, by virtue of working for small businesses, are not protected by Title VII." *Id.*

This Court finds the reasoning in *Spriggs* and *Fadeyi* persuasive for the discrete holding that at-will employees have a "contract" for purposes of § 1981. "[E]ven though an at-will employee can be fired for good cause, bad cause, or no cause at all, he or she cannot be fired for an illicit cause." *Fadeyi*, 160 F.3d at 1051–1052; *Mass v. McClenahan*, 893 F.Supp. 225, 230 (S.D.N.Y.1995) (stating that even if one were to consider a contract between an attorney and client to be terminable at-will, such a contract could not be terminated for a discriminatory reason) (citing *Campbell v. AT & T Communications*, 1994 WL 380620, at *3 (N.D.Ill. July 18, 1994) ("There is no 'at-will' defense to a federal discrimination complaint.")).

This Court is mindful of the fact that other courts in this District have reached differing conclusions on this point, holding that at-will employees are precluded from stating a claim under § 1981. *See Bascomb v. Smith Barney Inc.*, 1999 WL 20853, at * 4 (S.D.N.Y. Jan.15, 1999) (holding that because plaintiff had not alleged an employment contract and was thus an at-will employee, the plaintiff's § 1981 claims were dismissed); *Simpson v. Vacco*, 1998 WL 118155, at * 7 (S.D.N.Y. March 17, 1998) (holding that because an employment contract was not entered into, plaintiff was an at-will employee and precluded

from stating a § 1981 claim); *Moscowitz v. Brown,* 850 F.Supp. 1185, 1192 (S.D.N.Y. 1994) (dismissing plaintiff's § 1981 claims because of the lack of a contractual relationship with the defendant). For the reasons stated above, however, we find *Spriggs* and *Fadeyi* the more persuasive and appropriate precedent. Lazaro has asserted facts that, if true, indicate purposeful, racially discriminatory action by the Hospital resulting in her termination. Consequently, Lazaro has stated a claim under § 1981 and the Hospital's motion to dismiss it is denied.

## CONCLUSION

The defendant's motion to dismiss the plaintiff's Title VII and § 1981 claims is denied. The defendant's motion to dismiss the plaintiff's breach of contract claim is granted. The Clerk of the Court is directed to dismiss the third claim.

**SO ORDERED**